THE STATE *ex rel.* JACKSON COUNTY, *Appellant,* v. CHICK *et al.*

In Banc, December 13, 1898.

1. **County Clerk:** BREACH OF BOND.  The failure of a county clerk to make correct quarterly returns of the fees collected by him, constitutes a breach of his statutory bond. '

2. ———: ———: PLEADING.  Where a petition in a suit by the county on the bond of the county clerk charges that he failed to report or account for the fees sued for and that the county court had been induced to approve his quarterly statements in ignorance of the fact that such fees had been collected, and in reliance on his statement that such report contained all the fees received by him, it is unnecessary to further charge that the court made an order, as directed by section 5009, Revised Statutes 1889, requiring him to pay the money sued for into the county treasury, as the court under such circumstances is not required to make such order as a condition precedent to a suit on the bond.

3. **Evidence:** ADMISSIONS: EXTENT OF CROSS-EXAMINATIONS.  Where a witness testifies that on a former trial the defendants admitted signing the bond sued on, it is proper for them to show by the same witness on cross-examination that, in the testimony in which they made this admission, they also stated that the bond had been altered without their consent after they had signed it.  Such cross-examination related to the same subject inquired into by plaintiff.

4. **County Clerk:** ALTERATIONS IN BOND: MATTER FOR JURY.  It is for the jury to say whether or not certain testimony, tending to show that the penalty of a bond was changed from $10,000 to $5,000 after execution, did in fact show such change.  If the testimony tends in that direction the court should refuse an instruction declaring the evidence of a certain named witness does not tend to show such fact.

5. ———: ———: BURDEN OF PROOF.  Where the plea is *non est factum,* and it is plain on the face of the bond that a change has been made in the amount of the penalty, the burden of proof is on the plaintiff to show that the alteration was made before the defendants signed it, or that it was made with their consent.  Nor is this rule relaxed by the fact that the alterations consisted in decreasing the penalty of the bond.

6. **Practice:** ADMISSION: NEW PARTIES.  The sureties on a statutory bond, by filing a motion that the principal be made a party defendant, are not precluded from denying its execution or alteration.

7. ———: EXTENSION OF TIME TO ANSWER: GOOD FAITH. The defendant sureties filed a motion to make the county clerk a defendant in a suit on his bond, and obtained an extension of time in which to plead, but before the plea of *non est factum* was brought forward (nine months after suit was brought), the clerk died. The plaintiff asked the court to instruct the jury that defendants should have filed their answer much sooner, on the the ground that these matters bear on the *good faith* of the defense pleaded. *Held* that the instruction was properly refused.

8. Evidence: NEWSPAPER STATEMENTS: RATIFICATION. The fact that the sureties in a bond may have seen a local item in a newspaper, stating that a bond in the penal sum of $5,000 signed by them had been approved by the county court, when they had in fact executed a bond for $10,000, is no evidence that they consented to a change in the bond or ratified such change.

9. Appellate Practice: NEW POINT. A case on appeal must be disposed of upon the same theory upon which it was tried in the lower court.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*R. H. Field* and *James A. Reed* for appellant.

(1) Proof by plaintiff's witness Seidlitz that some of the defendants, when testifying at a former trial of this cause, admitted having signed the bond sued on, gave these defendants no right to prove another part of their testimony on a different subject, by this witness on his cross-examination, to wit, that they also testified at the former trial, that the penal sum of the bond had been changed from $10,000 to $5,000, and the court erred in allowing defendants to make such proof. *Lyons v. Botz*, 42 Mo. App. 606; *Waltner v. Hoeffner*, 51 Mo. App. 51; *Parsons v. Milling Co.*, 7 Mo. App. 594; *State v. Linney*, 52 Mo. 40; *State v. Grant*, 79 Mo. 114; 3 Jones on the Law of Evidence,

secs. 873, 876, 822. (2) John A. McDonald's evidence, offered by defendants, that the original sum of the bond sued on was for $10,000, or for a sum different than $5,000, on January 2, 1891, when it was first presented to the county court for approval, was shown on his recross-examinations to have been based, not upon any knowledge or recollection of having seen the same, or the signatures thereto, and taken as a whole, his evidence on this point was clearly a mere guess, surmise or impression, therefore not legitimate evidence. *Pugh v. Ayers*, 47 Mo. App. 590; *State v. Miller*, 44 *Ib.* 159; *Withrell v. Patterson*, 31 Mo. 458. And having been improvidently admitted, the court erred in not withdrawing it from the jury as asked in the sixth instruction. *State v. Owens*, 79 Mo. 620; *Bank v. Murdock*, 62 Mo. 74; *Home Lbr. Co. v. Hartman*, 45 Mo. App. 648; *Tyler v. Hall*, 106 Mo. 323. (3) The trial court having allowed the bond sued on to be read in evidence without explanation, against objection of defendants, and having twice refused a demurrer to the evidence, it should have maintained its consistency by declaring the burden of showing that the alleged alteration in the bond sued on was made after it was signed, was upon the defendants as contained in instruction 7, asked by plaintiff but refused by the court, and the court should not have declared that it was upon the plaintiff to prove that the alteration alleged was made before the bond was signed, as stated in instruction 12, asked by the defendants and given by the court. *Mathews v. Coolter*, 9 Mo. 696; *McCormick v. Fitzmorris*, 39 Mo. 25; *Paramore v. Lindsey*, 63 Mo. 63; *Burnett v. McCluey*, 78 Mo. 676; *Holton v. Kemp*, 81 Mo. 661; *Stillwell v. Patton*, 108 Mo. 353; *Lee v. Newland*, 164 Pa. St. 360; *Little v. Herndon*, 10 Wallace, 31. Especially was this error when the alleged alteration of the penalty of the

bond, as in this case, was a reduction of the amount of the liability of the defendants. *Den ex dem Farlee v. Farlee*, 21 N. J. L. 280; *Huntington & McIntyre v. Finch & Co.*, 3 Ohio St. 445; *Weber v. Mullins*, 78 Ala. 111; *Bailey v. Taylor*, 11 Conn. 531; *Hegman v. Stewart*, 38 Mich. 513; *Long v. Joplin Mining and Smelting Co.*, 68 Mo. 432. (4) Is the defense of the alleged alteration of the bond sued on sincere and *bona fide?* These circumstances of delay are certainly some evidence to the judicial mind of the lack of real sincerity and good faith in the defense made and the plaintiff had the legal right to have the jury know their full legal force and effect. *Evans v. Foreman*, 60 Mo. 453; *Koontz v. Kaufman*, 31 Mo. App. 420; *Kuhn v. Reid*, 18 *Id.* 135; *Young v. Ridenbaugh*, 67 Mo. 574. (5) Where the law has thus provided ample means by which a party may know a fact by the exercise of diligence on his part, the law, certainly after a reasonable time, deems him as having knowledge of such fact, and he can not deny or dispute that he has such knowledge. *Fleckenstein v. Baxter*, 114 Mo. 493; *Wimpy v. Evans*, 84 Mo. 145; *Barrett v. Davis*, 104 Mo. 549; *Speck v. Riggin*, 40 Mo. 405; Wade on Notice, sec. 11. For at least a reasonable time after signing the bond sued on and leaving it with Burr, it was the bounden duty of these sureties to inquire and ascertain if possible what actual use he had made of the same, the action of the county court thereon, and if approved by the county court in what sum, and its condition when filed in the office of the Secretary of State. If they failed to discover and repudiate what was done by him with it in such time they are bound thereby. *City of Chicago v. Gage*, 95 Ill. 593; *Cowley v. People, Id.* 249; *Carr v. Hilton*, 1 Curtis (U. S.), 390; *Whittemore v. Obear*, 58 Mo. 280; *Bank v. Morgan*, 117 U. S. 96.

*Witten & Hughes, Warner, Dean, Gibson & McLeod* and *Lipscomb & Rust* and *F. M. Black* for respondents.

(1) Plaintiff's petition did not state facts sufficient to constitute a cause of action. It did not allege that at each regular session the county court examined the statements of the county clerk and allowed necessary clerk hire, and it did not allege any finding by the county court that there was any amount after all due credits had been allowed in the hands of the county clerk exceeding the amounts authorized to be retained by him, nor did it allege that the county court had ascertained the amount of such excess, if any, over and above the amounts allowed to be retained by the county clerk, nor did it allege that the county court made an order directing the county clerk to pay the amount so ascertained into the county treasury, nor did it allege that the county court ordered this suit to be commenced on the official bond of Mr. Burr. Nor was there a particle of evidence as to any of these essential facts. These allegations were necessary and conditions precedent to a recovery of this action, and the evidence must sustain such necessary allegations. R. S. 1889, secs. 5009 and 5011; *State ex rel. v. Dent*, 121 Mo. 162; *State ex rel. v. Henderson*, 142 Mo. 598. (2) The evidence of defendants Ragan, Anderson and Major William Warner as executor of T. B. Bullene, is all to the effect that the bond in question was altered after it was signed by the sureties and before it was approved by the county court. It is shown by the evidence of Judge John A. McDonald that it was first presented to the county court in the sum of $10,000 on January 1, 1891; that the county court consented to its being changed and it was afterwards altered so as to make the penalty $5,000. Indeed there is not one word of evidence to

the contrary. Not only did the county court author-
ize the alteration to be made in the bond, but when it
was presented on January 2, 1891, for approval, the
court could not avoid seeing the erasure. This renders
the bond absolutely void as to these defendants, the
sureties, for all the evidence shows that Chick, Ander-
son and Ragan knew nothing of such alteration until
March, 1894, and that Bullene knew nothing of it till
the summer of 1894. *State v. McGonigle*, 101 Mo.
353; *State ex rel. v. Findley*, 101 Mo. 368; *Britton v.
Dierker*, 46 Mo. 592; *Trigg v. Taylor*, 27 Mo. 247;
*Ivory v. Michael*, 33 Mo. 400; *Haskell v. Champion*,
30 Mo. 138. (3) It is not sufficient that the obligor
may sustain no injury by a change in the contract, or
that it may be even for his benefit. *Glass Co. v.
Bottle Co.*, 81 Fed. Rep. 995; *Britton v. Dierker*, 46
Mo. 592; *Owings v. Arnot*, 33 Mo. 406; *Miller v.
Stewart*, 9 Wheat. 681; *Smith v. U. S.*, 2 Wall. 219;
*Reese v. U. S.*, 9 Wall. 22; *Stephens v. Graham*, 7
Serg. & R. 505; *Walton v. Hastings*, 4 Camp. 223;
*Outhwaite v. Luntley*, 4 Camp. 179; *Jacobs v. Hart*, 2
Starkie, 45; *Master v. Miller*, 4 Term. R. 320; *Chris-
tian v. Keen*, 80 Va. 369; *Dey v. Martin*, 78 Va. 1;
*Johnson v. Bank*, 2 B. Mon. 311; *Allen v. Dornan*, 57
Mo. App. 288; *Heim Brewing Co. v. Hazen*, 55 Mo.
App. 277; *Bricker v. Stone*, 47 Mo. App. 533; *Mid-
daugh v. Elliott*, 61 Mo. App. 601; *Bank v. Dunn*, 62
Mo. 79; *Robinson v. Berryman*, 22 Mo. App. 510.
(4) Plaintiff thought it necessary to allege that de-
fendants had ratified such change. To prove ratifica-
tion they showed that the defendants Chick, Ragan
and Anderson were readers of the Kansas City *Times*,
and that that paper on January 6, 1891, published an
account of Burr's filing a bond with the county court
in the sum of $5,000. (5) It was not their duty to
notify the county court of such alteration; nor having

failed so to do did their silence in any way work a ratification of the alteration. *Gentry v. Gentry*, 122 Mo. 220; *Scrutchfield v. Sauter*, 119 Mo. 622; *Blodgett v. Perry*, 97 Mo. 273; *Bales v. Perry*, 52 Mo. 449; *Acton v. Dooley*, 74 Mo. 74; *Brinckerhoff v. Lansing*, 4 Johns. Ch. 64; *Odlin v. Gove*, 41 N. H. 465; *Carter v. Champion*, 8 Conn. 554; *Bigelow v. Topliff*, 25 Vt. 273. (6) The discharge of one of the sureties discharges all. None can be held if the bond is void as to one. *People v. Buster*, 11 Cal. 215; *State v. McGonigle*, 101 Mo. 353; *Warden v. Ryan*, 37 Mo. App. 466; *State ex rel. v. Findley*, 101 Mo. 368; *Gugerty v. Vieths*, 14 Mo. App. 577; *Leavel v. Porter*, 52 Mo. App. 640. (7) *First*. Defendants under oath denied the execution of the bond. The burden of proof was then upon plaintiff to prove its execution in the sum of $5,000. This it utterly failed to do. *Second*. All the evidence showed that there had been an alteration in the bond after it was signed by the sureties and before approval. A presumption can have no weight when all the evidence shows its utter falsity. *Reaume v. Chambers*, 22 Mo. 53; *Erhart v. Detrich*, 118 Mo. 427; *Brannock v. Elmore*, 114 Mo. 65; Lawson on Presumptive Evidence, p. 576, rule 19; *Lee v. Knapp*, 55 Mo. App. 403; *Van Buren v. Cockburn*, 14 Barb. (N. Y.) 122; *Galpin v. Page*, 18 Wall. 366.

WILLIAMS, J.—This is a suit upon the official bond of M. S. Burr, late clerk of the county court of Jackson county. The action was begun on the eleventh of May, 1894, against the sureties only. The principal was not joined as a defendant.

The petition contains twelve counts. It is alleged therein that the county of Jackson, at whose relation and to whose use the suit is prosecuted, was, at all the times mentioned in the petition, and still is, an

organized county of the State of Missouri; that Burr was elected clerk of the county court of said county, on the fourth of November, 1890, for a term of four years; that he received his commission and duly qualified on the second of January, 1891; that, on said day, he and defendants, as his sureties, executed their bond to the State of Missouri in the penal sum of $5,000, conditioned for the faithful performance of the duties of his office. The bond is set out *in haec verba*. It is then stated that said bond was approved by the county court, and on the sixteenth of February, 1891, was deposited with the Secretary of State with the approval of said court indorsed thereon.

Plaintiff further charges that Burr received in fees, during the first quarter of the year 1891, $9,661.62, and was allowed for expenses of deputies and assistants for said quarter $1,525. It is then assigned, in the first count, as a breach of said bond that said Burr, only reported to the county court in his return of fees received by him during said first quarter of 1891, $8,899.80, and wholly failed to include in said quarterly statement $732.68 collected by him during that time for official services, and an itemized list of the sums so collected is then given; that he at no time thereafter made any report of said fees omitted from said return, and never accounted for or paid the same to the county. Plaintiff further charges that the county court approved said return of fees for that quarter without any knowledge or information that the sum of $732.68 above mentioned had been received by Burr and not reported to it; and that he obtained the approval of said return by means of a false statement therein, that it contained the total of all fees collected by him during said first quarter of 1891. Judgment is asked in this count for the penalty of the bond and that execution issue for said sum of $732.68 with interest thereon.

A similar breach, differing only as to amount, is assigned, in a separate count, for each of the remaining quarters of the year 1891, and for each quarter of 1892 and 1893, making twelve in all.    There were three additional counts but they were dismissed and need not be further noticed.

The answer was *first*, a plea of *non est factum*. This is based upon an alleged unauthorized alteration in the penalty of the bond, from $10,000 to $5,000; and *second*, that the county court, with full knowledge that Burr had collected the fees sued for and claimed the same as his own, made settlement with him and approved his reports, well knowing that said fees were not included in the same because of his claim thereto.

The replication denied the new matter in the answer, and alleged that if there were any alterations in the bond, the same had been subsequently ratified by defendants.

The parties offered evidence in support of their respective theories.

The jury returned a verdict for defendants and after an unsuccessful motion for a new trial, plaintiff has appealed.

The errors assigned by plaintiff require an examination of the rulings of the court in the admission of evidence, and in passing upon the instructions asked by the parties.    Any further facts necessary to a proper understanding of the points decided will appear in the opinion.

I.    Defendants make the point, which should be first disposed of, that the petition fails to state a cause of action and that the judgment must therefore be affirmed, regardless of the alleged errors complained of by plaintiff below, appellant here.

There is no allegation in the petition, that the county court, after the examination of the clerk's return of

fees collected by him, and the allowance of such sums as he was entitled to retain under the statute, for clerk hire and for his salary and other expenses, made an order, as provided by 2 Revised Statutes. 1889, section 5009, requiring him to pay the money sued for into the county treasury; or that there was, at any time, an order made directing him to pay this money to the county; nor is there any statement in the petition, that, upon his failure to make payment within fifteen days after being ordered so to do, the county court in accordance with section 5011 of the statute, directed this suit to be brought.

It is claimed that such proceedings in the county court constitute a condition precedent to plaintiff's right to maintain this action, and plaintiff must allege performance thereof. *State ex rel. v. Dent*, 121 Mo. 162, is cited in support of this contention. The clerk, in that case, made a correct report of the fees received by him, and there was no charge of any fraud, deceit or failure to make a fair and proper return of his collections. No order was made upon him to pay over the excess in his hands, after deducting the statutory allowances. It was held, upon these facts, that plaintiff in the absence of such order could not recover.

The petition in the case at bar proceeds on an entirely different theory. The charge here is, that the clerk wholly failed to report or account for the fees sued for, and that the county court was induced to approve his quarterly statements in ignorance of the fact that they had been collected, and in reliance upon the false statement that said reports contained the total fees received by him.

It was the duty of the clerk to make true and correct quarterly returns of the fees collected. His failure to do so constituted a breach of his bond. The unreported fees remaining in his hands after he had retained,

from those included in his reports, the amounts to which he was entitled under the statute, were held by him to the use of the county. The allegation is that the county court had no knowledge or information of these collections. The clerk and his sureties can not, after his failure to make mention of them in his quarterly returns, escape liability or defeat this action because no order was made, upon approval of these settlements for him to pay over this money, of which the court was kept in ignorance. Neither was it a prerequisite that an order for suit upon the bond should have been made under section 5011. That section only applies where there is a failure for fifteen days to obey the direction of the county court to pay into the treasury the amount ascertained by said court to be due. If the omission of an order to pay over the funds will not defeat this action, it follows, that the non-observance of the procedure directed to be taken for *disobedience of such order* can not have that effect. The recent case of *State ex rel. Callaway County v. Henderson*, 142 Mo. 598; and same case in 139 Mo. 510, are directly in point upon this question.

The breaches of the bond are well assigned.

II.   We now come to a consideration of the rulings for which plaintiff asks a reversal.

A witness named Seidlitz was introduced by plaintiff. He was present and heard the testimony of defendants at a former trial of the case. He said that they admitted signing the bond sued on. The defendants were permitted, upon cross-examination, over plaintiff's objection, to show by the witness, that, in the same testimony in which they made this admission, they also stated, that the penalty in the bond was changed, without their consent, after they signed it, from $10,000 to $5,000.

We think this cross-examination was entirely proper. Plaintiff called for a part of the evidence given by defendants at a previous time. They were certainly entitled to have the jury informed by the witness of *all* that was said by them at *that* time *upon the subject inquired about by plaintiff* in the direct examination. It would have been palpably unfair, to leave unexplained by the remainder of their testimony, the statement that they admitted signing the bond. The evidence called out in the cross-examination developed the fact that they did not admit that they signed the instrument as it was when sued on. They testified that although the signatures were theirs, yet when they executed it, the penalty in the bond was $10,000.

Plaintiffs could not, with any justice, introduce part of their statements as to the execution of the bond by them, and exclude the remainder.

III. The court properly refused an instruction asked by plaintiff that there was nothing in the evidence of John A. McDonald, one of the county judges, tending to show that the bond sued on was for the sum $10,000, or any different sum than $5,000, when it was signed by the sureties. This witness, during his examination, stated, in answer to a question by defendant's counsel, that it was his impression that the bond, when it was originally presented, was for but $10,000, but he "could not swear to it;" that he thought it was changed between the first and second of January. He then added, "My impression is that on the 1st of January the bond was brought there, *and it was for more than $5,000, but I couldn't say it was a bond for ten or fifteen thousand dollars, but it was for more than five thousand dollars,* and on the second day we approved a bond for five thousand dollars." It is true that in another part of his testimony, during the examination

by plaintiff, he said that he did not know, when the bond was approved, that it had been altered.

It was for the jury to pass upon the weight and credit to be given to the evidence. The court properly refused to usurp their province. The evidence of the witness *tended* to show that the bond was originally for more than $5,000. The jury and not the court should decide how *strongly* it *tended* in that direction.

But, in addition, McDonald had testified fully, in the presence of the jury, concerning the alleged alteration in the bond. He was examined, cross-examined and re-examined, upon that subject without objection. The jury heard what he had to say about it. We can not think that a trial court is called upon to single out each witness by name, and tell the jury that the evidence of this or that one does not tend to establish this or that particular fact in controversy between the parties; or that the court can be declared guilty of error in failing so to do. Such a rule would entitle each party to require the court to pick out each witness in the case and declare in the instructions what material facts the testimony of such witness had *no tendency* to prove. We can not think any such duty is imposed upon the court.

IV. We find no fault, under the facts of this case, with the instruction that the burden was upon the plaintiff to show that the alteration in the instrument sued on was made before defendants signed it. The testimony shows that it was plain to be seen that an erasure had been made in the penalty of the bond. The word "five" was written over a space from which something had *evidently* been erased. This was *manifest* from an inspection of the paper. The defense was *non est factum*. The burden was therefore on plaintiff to show that defendants executed the instrument as

*sued on;* that the *identical* paper, upon which a recovery was sought against them, was *their* bond. The plaintiff attempted to do this by proving that the signatures were genuine, and that it was admitted by defendants upon a former trial that they signed the paper, but it further appeared that this admission was coupled with the statement that the penalty of the bond had been changed after they executed it, without their knowledge or consent. The testimony offered by defendant tended to prove that, while their genuine signatures were attached to the paper, it was for a different amount when they executed it, and that the contract sued on was never entered into by them. There was never any denial or dispute that the names upon the paper were written by the defendants respectively. The question was, did they execute the bond filed as the foundation of the action? Plaintiff held the affirmative of *that* issue. The position of the parties should not be changed by indulging in presumptions. To say that under the pleadings and under the evidence, as it stood before the jury, it should be presumed that the alteration was made before defendants signed the obligation, would simply shift upon *them,* notwithstanding their plea of *non est factum,* the burden of disproving plaintiff's allegation, that they executed the instrument. It can make no difference that the penalty of the bond was decreased. Defendants had the right to stand upon the very terms of their contract; to deny that the bond sued on was their bond; and to require that its execution be proved. The *onus* was on plaintiff to do so.

"If nothing appears to the contrary the alteration will be presumed to be contemporaneous with the execution of the instrument. But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the

time when it was done, as well as that of the person by whom, and the intent with which, the alteration was made, *as matters of fact* to be ultimately found by the jury, upon *proofs to be adduced by the party offering the instrument in evidence.* 1 Greenleaf Ev. [14 Ed.], sec. 564." *Paramore v. Lindsey,* 63 Mo. 63; *Smith v. U. S.,* 2 Wall. 219. "If there be suspicious circumstances on the face of the instrument, it is for the judge trying the case to determine from inspection whether it be such as to require the party offering it to explain the matter." *Holton v. Kemp,* 81 Mo. *loc. cit.* 665; *McCormick v. Fitzmorris,* 39 Mo. 24; *Matthews v. Coalter,* 9 Mo. 696; Murfree on Official Bonds, sec. 756.

It was plain from the face of the paper that a change had been made in it. Its execution was denied under oath. We think the court properly held that it devolved upon plaintiff under the facts as they appear in this record to show that the change was made before defendants signed it.

Plaintiff was not injured by this instruction. The judgment can not be reversed on that account.

V. The defendants filed a motion to require plaintiff to make Burr, the principal in the bond, a party defendant. They also asked and obtained an extension of time for pleading. The plea of *non est factum* was not set up until some nine or ten months after the suit was brought. Burr had died in the meantime. No action was taken upon the motion to make him a party. An instruction was asked by plaintiff, declaring that, in the regular course of procedure, defendants should have filed their answers much sooner than they did. The court was also requested to instruct that the motion to make Burr a party was such a recognition of the bond as precluded defendants thereafter from denying its execution. The court did right to refuse both instructions. Plaintiff insists that these

matters bear upon the good faith of the defense now being made. It is to be presumed that proper cause was shown to the court for extending the time to plead. The jury had nothing whatever to do with that matter. It was for the court and not the jury to pass upon the reasons for this delay. The court presumably for sufficient reasons, gave additional time for answering.

The instruction referred to was misleading. It did not tell the jury what inference or deduction they were authorized to draw, or should draw from the failure to answer in the usual time, nor how that fact should affect their verdict. They were simply informed that three or more terms elapsed after the usual time for pleading before the answer was presented. They were then left to grope in the dark, and decide for themselves, whether this constituted a complete or partial defense to the action, or what, if any, effect should be given to it by them. It was properly refused.

The motion to make Burr a defendant can not be regarded as any ratification of the bond as altered. He was the principal in the obligation. It was binding upon him. While the plaintiff had the right to sue any or all of the parties, at its election, the request to have Burr brought in to defend, can not be regarded as a confession of the execution by defendants of the instrument sued on. The defense of *non est factum* is not the only answer made. Defendants also rely upon settlements made by Burr with the county court. The fact that they wanted him made a party to defend the action, would not prevent them from denying the execution of the bond.

VI. The newspaper articles read in evidence, accompanied as they were by proof that some, at least, of defendants were regular subscribers of the papers in which they appeared, had no tendency to show that defendants ratified the bond as altered. The city

papers announced as news items the approval of Burr's bond, in the penal sum of $5,000 and that defendants Chick, Anderson, Regan, and Bullene, now deceased, whose executors are defendants, were the sureties thereon. Some of the defendants testified that they had no recollection of having seen the articles. It certainly is not clear that Bullene ever knew of them. If it had appeared that defendants read these items, no inference could be drawn therefrom, that they consented to a change in their contract. They knew they executed a bond for $10,000. It would have been entirely reasonable for them to have dismissed from their attention the newspaper statements as mere mistakes. This would have been more probable, than for them to have concluded that an unauthorized change had been made in the bond executed by them. Ratification can not be predicated upon their failure to verify the reports given in the city papers. Nor do we think that it can be based upon an omission by them to notify the county court of the alteration. It does not appear that they knew of the change in the penalty of the bond in time for notice from them to serve any useful purpose, *so far as the fees sued for are concerned*. The court properly ruled that there was no evidence of ratification.

VII. It has been suggested in this court, that the jury should have been required to pass upon the question, whether the county court, at the time of the approval of the bond, had notice of the alteration therein and that such notice should have been shown. This point is presented *here* for the *first* time. No such question was submitted to or passed upon by the trial court. Our duty is to review the rulings of *that* court, not to pass upon a *new* case. *Nolan v. Johns*, 126 Mo. *loc. cit.* 167. Neither in the objections to evidence nor in the instructions is that point made or even hinted

at. The instructions asked by plaintiff are similar in that behalf to those requested by defendant. The case must be disposed of here upon the same theory upon which it was tried in the lower court. This is the well settled and firmly established rule of appellate practice. *Trigg v. Taylor*, 27 Mo. *loc. cit.* 248; *Walker v. Owen*, 79 Mo. 563; *Whetstone v. Shaw*, 70 Mo. 575; *Tomlinson v. Ellison*, 104 Mo. 105.

The trial court can not be charged with error in omitting to pass upon a matter that was never submitted to it, and which, under the theory adopted by both parties, it was not called upon to decide.

We have examined all the assignments of error and find nothing in the record that will justify us in interfering with the judgment. It is accordingly affirmed. GANTT, C. J., SHERWOOD and BURGESS, JJ. concur. ROBINSON, BRACE and MARSHALL, JJ., dissent.